*784
 
 OPINION
 

 Per Curiam:
 

 In this appeal, we consider whether a guilty plea canvass involving a mass advisement of rights, followed by an individual colloquy wherein the district court failed to ensure that the defendant was present during the mass advisement and understood his rights, renders a prior conviction unconstitutional. We agree that it would be better practice for courts engaging in mass advisements to follow up those advisements with an individual colloquy which demonstrates that each particular defendant heard and understood his rights. Nevertheless, we conclude that the mass advisements and individual colloquies involved here are constitutionally sufficient because the justice court appropriately informed appellant Paul Picetti of: (1) the nature of the charges against him, (2) his right to be represented by counsel, and (3) the range of allowable punishments he could receive as a result of his guilty plea. We further conclude that the State met its burden to establish the validity of Picetti’s prior convictions for driving under the influence (DUI) because it demonstrated that Picetti was informed of his right to counsel and that his prior DUI convictions met the spirit of constitutionality.
 

 In this appeal we also decide whether a recently enacted statute (NRS 484.37941), which allows certain third-time DUI offenders who plead guilty to apply for treatment and, upon successful completion of an approved treatment program, to be convicted of a misdemeanor DUI, applies to an offender who both committed his offense and pleaded guilty prior to the new statute’s effective date.
 
 [1]
 
 We conclude that it does not. Instead, we conclude that
 
 *785
 
 NRS 484.37941 applies only to those offenders who entered guilty pleas on or after July 1, 2007, the statute’s effective date.
 
 [2]
 
 Picetti also raises several issues regarding the constitutionality of NRS 484.37941. However, because we conclude that this statute does not apply to Picetti, we decline to address those issues in the instant case.
 

 FACTS AND PROCEDURAL HISTORY
 

 On March 10, 1999, Picetti entered a guilty plea to his first-offense misdemeanor DUI in the Canal Justice Court in Lyon County, Nevada. Picetti was not represented by counsel, but the justice court verbally counseled Picetti in a mass advisement addressed to all misdemeanor defendants as to his right to an attorney at every stage of the proceedings. During the mass advisement, the justice court also notified all of the defendants of the possible pleas they could enter as well as the possible punishments for both general misdemeanors and for first, second, and third DUI offenses.
 

 After the mass advisement, Picetti was the first person the justice court individually canvassed regarding whether he understood the charges and the possible penalties for a first-offense DUI. Picetti indicated that he understood the charges and penalties and entered a plea of guilty to a first-offense misdemeanor DUI. During the canvass, the justice court did not inquire as to whether Picetti was present during the mass advisement, whether he understood the rights he waived by entering a guilty plea, whether he understood his right to be represented by counsel, and whether he wished to waive that right. Picetti also received a misdemeanor rights form and a DUI rights form that advised him of those rights, including the right to counsel, and he signed both forms immediately after entering his guilty plea. Only the DUI waiver of rights form was file stamped; however, both forms are part of the record.
 

 
 *786
 
 On August 11, 1999, Picetti was convicted, pursuant to a guilty plea, of a second-offense misdemeanor DUI. According to Picetti, the transcript for his arraignment/mass advisement is missing. Nevertheless, Judge Stephan W. Lehman signed Picetti’s DUI waiver of rights and attested that he personally canvassed Picetti. Additionally, Picetti received a misdemeanor rights form and a DUI rights form advising him of his right to counsel. Picetti signed both of these waiver forms, but, because the record is missing, it is unclear whether he signed them after he pleaded guilty. On the misdemeanor waiver form, which is not file stamped but is part of the record, Picetti acknowledged by his signature that he waived his right to counsel. Picetti also signed and initialed the DUI waiver of rights, which is file stamped, indicating that he understood all of his rights relating to the guilty plea, including his right to counsel. Picetti was represented by counsel at his sentencing hearing on October 5, 1999, and did not challenge the validity of his guilty plea at that time.
 

 On September 11, 2006, Picetti entered a plea of not guilty to his third-offense felony DUI. Picetti filed a motion to suppress his prior DUI convictions, alleging that they were constitutionally infirm. The district court denied the motion to suppress. Thereafter, on April 30, 2007, Picetti pleaded guilty to a third-offense felony DUI. Prior to sentencing, Picetti filed an application for treatment pursuant to the newly enacted provisions of NRS 484.37941. The Lyon County District Attorney supported Picetti’s application for treatment.
 

 On October 1, 2007, the district court held Picetti’s sentencing hearing. Picetti’s attorney notified the district court of the application for treatment pursuant to NRS 484.37941 and the district attorney’s support of that application. Picetti’s counsel also requested to be heard on the diversion program set forth in NRS 484.37941, a request the district court declined. After questioning the constitutionality of NRS 484.37941, the district court denied Picetti’s application for treatment and pronounced Picetti’s sentence. Picetti moved the district court for a stay of the imposition of the sentence and bail pending appeal; the district court denied both motions.
 

 Picetti appeals from the judgment of conviction.
 
 [3]
 
 On appeal, Picetti contends that the district court erred by denying his motion to suppress his prior DUI convictions on the following grounds: (1) the mass advisements and individual colloquies conducted by the justice court in his prior DUI cases were constitutionally in
 
 *787
 
 sufficient, and (2) the State failed to demonstrate that he was properly informed of his right to counsel and that the spirit of constitutionality was met in his prior convictions. Further, Picetti claims that even if the prior convictions are admissible, the district court erroneously refused to allow him the opportunity to apply for the treatment program established in NRS 484.37941 for third-offense DUI offenders. We address each of these claims below.
 

 DISCUSSION
 

 The constitutionality of mass advisements in misdemeanor proceedings
 

 Picetti broadly attacks the constitutionality of mass advisements in misdemeanor proceedings and urges this court to accept mass advisements as constitutionally sufficient only when they are followed by an individual colloquy which demonstrates that the defendant heard and understood his rights, particularly his right to counsel. This court has never addressed the issue of whether a mass advisement is constitutionally adequate to advise a defendant pleading guilty to a misdemeanor of his or her rights. We agree that in the future, it would be better practice for courts engaging in a mass advisement to conduct an individual colloquy to determine whether the defendant was present at the mass advisement and understood the rights explained by the court. Nevertheless, we conclude that the mass advisements and individual colloquies given in this case were constitutionally sufficient pursuant to the United States Supreme Court’s decision in
 
 Iowa v.
 
 Tovar.
 
 [4]
 

 Tovar
 
 is particularly instructive on the issue of what is constitutionally required of a trial judge accepting a guilty plea from an uncounseled defendant.
 
 [5]
 
 In
 
 Tovar,
 
 the Supreme Court held that the constitution only required the trial judge to inform “the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and of the range of allowable punishments attendant upon the entry of a guilty plea.’ ’
 
 [6]
 
 Further, as the Supreme Court noted in
 
 Tovar,
 
 “[t]he information a defendant must possess in order to make an intelligent election, our decisions indicate, will depend on a range of case-specific factors, including the defendant’s education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.”
 
 [7]
 
 This reasoning is consonant with our own requirement that when review
 
 *788
 
 ing the sufficiency of a plea canvass, each case must be decided upon the particular facts and circumstances of the case.
 
 [8]
 

 We conclude that under the facts and circumstances here, Picetti’s plea canvasses were sufficient to pass constitutional muster. During the mass advisement for Picetti’s first-offense DUI conviction, the justice court informed Picetti of his right to have an attorney at every stage of the proceeding and that if he could not afford an attorney, one would be provided without cost. The justice court also informed Picetti of the nature of the charges against him and the possible punishment involved, including the enhanced penalties involved in a DUI citation. The justice court further instructed misdemeanor defendants to ask any questions they wished during the individual colloquy. The record reflects that during Picetti’s individual colloquy, the justice court inquired whether Picetti understood the citation and the nature of his charges, including the enhanced penalties, and Picetti indicated he understood both. The justice court then accepted Picetti’s guilty plea. These facts and circumstances demonstrate that Picetti was appropriately informed of his right to counsel, the nature of the charges against him, and the possible punishments he could receive as a result of his guilty plea in regard to his first-offense DUI conviction. Moreover, the misdemeanor waiver of rights form and the DUI rights forms Picetti received both indicated that he was advised of his right to counsel and that he waived that right.
 

 We acknowledge that there is no record regarding the content of the mass advisement and individual colloquy in Picetti’s second-offense DUI conviction. We note, however, that Judge Lehman signed Picetti’s DUI waiver of rights and attested that he personally canvassed Picetti as to his rights. Additionally, Picetti was advised by a misdemeanor waiver of rights form and a DUI rights form of his right to counsel and signed both of these forms. Under these circumstances, we conclude that Picetti was appropriately informed of his right to counsel, the nature of the charges against him, and the possible punishments he could receive as a result of his guilty plea in regard to his second-offense DUI conviction.
 

 Moreover, in this case we find it particularly compelling that Picetti does not allege that he was absent during any portion of either of the mass advisements given by the justice courts or that he did not understand his right to counsel in either of his prior convictions.
 
 [9]
 
 Because Picetti was present for the mass advisements and the justice court properly informed Picetti of his right to counsel and the possible punishments he could incur as a result of entering
 
 *789
 
 a guilty plea, we conclude that the justice courts’ mass advisements and individual colloquies of Picetti respecting his guilty pleas for first-offense and second-offense DUI convictions were constitutionally sufficient.
 

 Picetti’s motion to suppress his prior convictions
 

 Picetti argues that the district court erred when it denied his motion to suppress both his prior first-offense and second-offense DUI convictions. Picetti contends that the State failed to meet its burden to demonstrate the constitutionality of these convictions.
 

 In order to establish the validity of a prior misdemeanor conviction offered for enhancement purposes, the State must “affirmatively show either that counsel was present or that the right to counsel was validly waived, and that the spirit of constitutional principles was respected.”
 
 [10]
 
 This court has likewise stated that, with respect to an advisement on the waiver of counsel, “[t]he same stringent standard does not apply to guilty pleas in misdemeanor cases” as applies in felony cases.
 
 [11]
 
 In so concluding, this court explained that it could not ignore the fact that justice and municipal court procedures and records were not as uniform as those used in district courts.
 
 [12]
 
 With these principles in mind, we now examine Picetti’s prior convictions.
 

 First DUI conviction
 

 Picetti argues that the district court erred by failing to grant his motion to suppress his first-offense DUI conviction. He contends that his prior conviction is constitutionally infirm because he signed both of the waiver of rights documents, which included the waiver of counsel, after he entered his guilty plea, rendering the waiver and his guilty plea void. Picetti argues that because the justice court never verified that he knowingly and voluntarily waived his right to counsel prior to accepting his guilty plea, the justice court failed to comply with the spirit of constitutional principles.
 
 *790
 
 Picetti further argues that this court’s decision in
 
 Bonds
 
 v. State
 
 [13]
 
 supports his contention that a waiver of rights form must be signed prior to the entry of guilty plea.
 

 Preliminarily, we note that the district court agreed with Picetti’s contention that his misdemeanor waiver of rights form was invalid because he signed it after entering his guilty plea. Notwithstanding this determination, the district court concluded that Picetti’s first-offense DUI conviction was still valid because he also signed a DUI waiver of rights form, which advised him of his right to counsel, and Picetti never alleged that this waiver was signed after he entered his guilty plea. Problematically, however, in its opposition to the motion to suppress filed in the district court below, the State admitted that “after pleading guilty, Picetti left the courtroom and executed the DUI waiver of rights, acknowledging his waiver of rights, including the right to counsel.” For the reasons set forth below, we conclude that despite this error, the district court reached the right result, albeit for the wrong reason.
 
 [14]
 

 First, we reject Picetti’s contention that his misdemeanor waiver of rights form was invalid because he signed it after he entered his guilty plea. We conclude that this argument focuses too narrowly and rigidly on the timing of his waiver of his right to counsel and ignores the realities that face the courts of limited jurisdiction in this state. Instead, we reaffirm our view that each case must be examined under the totality of the facts and circumstances of that particular case.
 
 [15]
 
 Moreover, as this court concluded in
 
 Koenig v. State,
 
 “the realities of the typical environment of such prosecutions in these courts of limited jurisdiction cannot be ignored” and “the convenience of the parties and the court should be given considerable weight.”
 
 [16]
 

 With this in mind, we conclude that the totality of the facts and circumstances in this case demonstrates that Picetti knowingly and voluntarily waived his right to counsel. As discussed above, the justice court fully informed Picetti of his rights, including the right to counsel, in a mass advisement and instructed the defendants that it would answer questions they had about the charges and proceedings. Then, the justice court addressed Picetti individually, asked him if he understood the charges, and accepted his guilty plea.
 

 
 *791
 
 Shortly thereafter, during the proceeding, the justice court asked Picetti to sign his misdemeanor waiver of rights, which included the waiver of his right to counsel. Picetti signed this waiver and indicated that he understood his right to counsel and freely and voluntarily waived that right. Immediately following his arraignment, Picetti completed his DUI waiver of rights form and initialed the paragraph stating,
 

 I understand that I have the right to have an attorney represent me, that his representation can be very valuable in evaluating the facts, the law, in presenting my evidence and in challenging the State’s evidence, I understand that if I cannot afford an attorney the Court will appoint an attorney to represent me.
 

 Picetti then initialed the paragraph indicating, “I give up the right to be represented by an attorney.” The DUI waiver of rights form also contains an acknowledgement, signed by Judge Lehman, indicating that Picetti was advised of his right to counsel and waived that right. Moreover, as noted above, Picetti has never alleged that he was not present for the duration of the mass advisement. Therefore, we conclude that Picetti was properly informed of his right to counsel and knowingly and voluntarily waived that right.
 

 We further conclude that Picetti’s reliance on
 
 Bonds
 
 is misplaced. In
 
 Bonds,
 
 this court determined that a waiver of counsel was invalid because the defendant had initialed both the paragraph indicating that he waived his right to counsel and the paragraph indicating that he did not waive his right to counsel.
 
 [17]
 
 Picetti argues that the following language in
 
 Bonds
 
 required the justice court to ensure that he signed his waiver prior to accepting his plea: “[ujnder these circumstances, it is impossible to conclude that appellant knowingly waived his right to counsel prior to entering his guilty plea in the [prior] prosecution.”
 
 [18]
 
 In our view, Picetti places too much emphasis on the language suggesting that a defendant must waive the right to counsel prior to entering the plea because the timing of the defendant’s waiver was not a central issue in
 
 Bonds;
 
 rather, that case turned upon the ambiguity created when Bonds initialed the two conflicting paragraphs, thereby making it impossible to ascertain whether Bonds had really waived his right to counsel. In this case, there is no comparable ambiguity as Picetti affirmatively checked paragraphs on both his misdemeanor waiver of rights form and his DUI waiver of rights form indicating that he knowingly and voluntarily waived his right to counsel during the guilty plea proceeding. Considering all the facts set forth above, we conclude that the district court did not err when it denied Picetti’s motion to suppress his first-offense DUI conviction.
 

 
 *792
 

 Second DUI conviction
 

 Picetti also argues that the district court erred by failing to grant his motion to suppress his conviction for a second-offense DUI. Specifically, Picetti argues that the district court was required to evaluate the record supporting the conviction to determine the appropriateness of using a prior misdemeanor for enhancement purposes. In particular, Picetti argues that because the transcript of the second-offense DUI proceeding is missing, the district court was not able to properly determine whether he validly waived his right to counsel and whether the spirit of constitutional principles was upheld. We disagree.
 

 Instead, we conclude that the record from Picetti’s second-offense DUI conviction reflects that the justice court respected the spirit of constitutional principles and that Picetti knowingly and voluntarily waived his right to counsel.
 
 [19]
 
 Importantly, Judge Lehman signed Picetti’s DUI waiver of rights and attested that he personally canvassed Picetti as to his rights. Picetti never alleged that he was not present when the justice court informed him of his rights. Additionally, Picetti was advised of his right to counsel by a misdemeanor waiver of rights form and a DUI waiver of rights form, and he signed both of these forms indicating that he understood all of his rights relating to the guilty plea, including his right to counsel. Moreover, Picetti entered a guilty plea to his first-offense DUI charge only four months prior to committing his second-offense DUI, and therefore Picetti was experienced in the process of entering a guilty plea.
 
 [20]
 
 Under these circumstances, we cannot conclude that Picetti’s second-offense DUI conviction was constitutionally infirm. Therefore, the district court did not err when it denied Picetti’s motion to suppress his second-offense DUI conviction.
 
 [21]
 

 The applicability of NRS 484.37941
 

 Picetti argues that the district court erred in refusing to consider NRS 484.37941 when it sentenced him for his third-offense
 
 *793
 
 felony DUI. Picetti argues that because the district court sentenced him on October 1, 2007, after the statute’s effective date on July 1, 2007, the provisions of NRS 484.37941 should apply in the instant case because it is an ameliorative statute. We disagree.
 

 This court recently addressed the issue of the retroactivity of ameliorative sentencing statutes in
 
 State v. District Court (Pullin),
 
 rejected the doctrine of amelioration, and reaffirmed that “unless the Legislature clearly expresses its intent to apply a law retroactively, Nevada law requires the application of the law in effect at the time of the commission of a crime.’ ’
 
 [22]
 
 Further, this court concluded that “legislative intent, this court’s jurisprudence, and public policy considerations require this rule to apply even in the absence of a savings clause.”
 
 [23]
 
 Therefore, the question of whether NRS 484.37941 applies in the instant case depends upon whether the Legislature clearly expressed its intent to apply the law retroactively. For the reasons set forth below, we conclude that the statute does not operate retroactively.
 

 NRS 484.37941 and legislative intent
 

 Picetti contends that the legislative history supports his assertion that the Legislature intended NRS 484.37941 to apply retroactively to cases not finalized by July 1, 2007. He contends that, because the main purpose of the statute is to provide for treatment of felony DUI offenders who repeatedly make the decision to drive while intoxicated, presenting a severe risk to society, the Legislature intended the statute to apply at the earliest date possible. We disagree. We acknowledge that the legislative history reveals that the Legislature was well aware that the pilot program, upon which the treatment program established in NRS 484.37941 is based, was extraordinarily successful in Clark County, achieving low rates of recidivism among program participants.
 
 [24]
 
 Nevertheless, we conclude that the Legislature did not clearly evince its intent to apply NRS 484.37941 retroactively to those cases not finalized by July 1, 2007. Had the Legislature wished to make the statute retroactive, it certainly could have expressed that desire; instead, the Legislature clearly stated that the effective date of the statute was July 1, 2007.
 
 [25]
 

 We conclude, however, that NRS 484.37941 applies to those defendants entering guilty pleas on or after the statute’s effective
 
 *794
 
 date. Importantly, the plain language of NRS 484.37941 states, ‘ ‘An offender
 
 who enters a plea of guilty or nolo contendere
 
 to a violation of NRS 484.379 or NRS 484.379778 that is punishable pursuant to paragraph (c) of subsection 1 of NRS 484.3792
 
 may, at the time he enters his plea,
 
 apply to the court to undergo a program of treatment.” (Emphases added.) As noted above, Section 6 of the bill provides that the act becomes effective on July 1, 2007. We conclude that the statutory language provides that anyone entering a plea of guilty or nolo contendere after the statute’s effective date is eligible to apply for treatment.
 

 Because Picetti entered his guilty plea on April 30, 2007, prior to the July 1, 2007, effective date, we conclude that Picetti was not eligible to apply for treatment pursuant to NRS 484.37941. To the extent Picetti raises several issues regarding the constitutionality of NRS 484.37941, we decline to address these issues here. Accordingly, we conclude that the district court did not err in refusing to allow Picetti to apply for treatment pursuant to NRS 484.37941.
 

 Retroactive application of procedural statutes
 

 Picetti also argues that this court should apply NRS 484.37941 retroactively because it is a procedural and remedial statute. This court recently addressed a similar claim in
 
 Pullin
 
 and held that, pursuant to this court’s decision in
 
 Castillo v. State,
 

 [26]
 

 we would not apply procedural rules retrospectively unless such rules were of constitutional dimension.
 
 [27]
 
 We conclude that the provisions set forth in NRS 484.37941 are not of constitutional dimension; instead, the provisions merely give the district court discretion to allow a defendant to complete a treatment program in order to obtain a conviction and sentence for a lesser offense. As a result, we conclude that Picetti’s claim lacks merit.
 

 CONCLUSION
 

 We conclude that the district court did not err when it denied Picetti’s motion to suppress his first-offense and second-offense DUI convictions for two reasons. First, we conclude that the mass advisements and individual colloquies provided by the justice court respecting Picetti’s guilty pleas were constitutionally sufficient. Second, we conclude as to Picetti’s misdemeanor prior convictions that the justice court respected the spirit of constitutionality and
 
 *795
 
 properly informed Picetti of his right to counsel. We also conclude that NRS 484.37941 applies to those defendants who entered their guilty pleas on or after My 1, 2007. Therefore, we conclude that the district court did not err in denying Picetti’s application for treatment before the statute’s effective date. Because NRS 484.37941 is not applicable to Picetti, we decline to reach the constitutional issues raised in this appeal. Accordingly, we affirm the judgment of conviction.
 

 [1]
 

 Under NRS 484.37941, a third-time DUI offender may seek to undergo a program of treatment for a minimum of three years. Pursuant to the statute, the State may oppose the offender’s application and request a hearing on the matter. If the district court grants the application for treatment, it must suspend the
 
 *785
 
 proceedings and place the offender on probation for a period not to exceed five years. Probation is conditioned upon the offender’s acceptance for treatment by a treatment facility and the completion of that treatment and any other conditions as ordered by the district court. If the offender is not accepted for treatment or if he fails to complete any of the district court’s conditions, the court will enter a judgment of conviction for a violation of NRS 484.3792(l)(c), a category B felony, and the district court may reduce the amount of time in prison by a time equal to that which the offender spent in treatment. On the other hand, if the offender successfully completes treatment, the district court will enter a judgment of conviction for a violation of NRS 484.3792(l)(b), which is a misdemeanor.
 

 [2]
 

 2007 Nev. Stat., ch. 288, § 6, at 1064.
 

 [3]
 

 On October 15, 2007, Picetti filed a petition for a writ of mandamus in this court, seeking an order compelling the district court to consider the program set forth in the newly enacted NRS 484.37941. We denied the petition.
 
 Picetti
 
 v.
 
 Dist. Ct.,
 
 Docket No. 50355 (Order Denying Petition, October 23, 2007).
 

 [4]
 

 541
 
 U.S.
 
 77 (2004).
 

 [5]
 

 Id.
 

 [6]
 

 Id.
 
 at 81.
 

 [7]
 

 Id.
 
 at 88 (citing
 
 Johnson v. Zerbst,
 
 304 U.S. 458, 464 (1938)).
 

 [8]
 

 State
 
 v.
 
 Freese,
 
 116 Nev. 1097, 1106, 13 P.3d 442, 448 (2000).
 

 [9]
 

 Tovar,
 
 541 U.S. at 92-93 (finding persuasive, in determining the validity of a guilty plea, that the defendant never claimed that he did not understand the charge or that he was unaware of his right to counsel).
 

 [10]
 

 Dressler
 
 v. State, 107 Nev. 686, 697, 819 P.2d 1288, 1295 (1991).
 

 [11]
 

 Koenig
 
 v. State, 99 Nev. 780, 788-89, 672 P.2d 37, 42-43 (1983);
 
 see also Hartman
 
 v.
 
 Municipal Ct. for No. Jud. D. of San Mateo Cty.,
 
 111 Cal. Rptr. 126, 127 (Ct. App. 1973) (rejecting a defendant’s attack on the constitutionality of his prior conviction premised upon the insufficiency of a mass advisement noting that “ ‘when a defendant appears in court personally to plead to a misdemeanor offense, the practicalities of the crowded inferior courts will permit some deviation from the strict felony procedure so long as the constitutional rights of defendants are respected’” (quoting
 
 Mills v. Municipal Court for San Diego Jud. Dist.,
 
 515 P.2d 273, 286 (Cal. 1973))).
 

 [12]
 

 Koenig,
 
 99 Nev. at 789, 672 P.2d at 43.
 

 [13]
 

 105 Nev. 827, 828-29, 784 P.2d 1, 1-2 (1989).
 

 [14]
 

 See Wyatt
 
 v.
 
 State,
 
 86 Nev. 294, 298, 468 P.2d 338, 341 (1970) (stating that this court will affirm the judgment of a district court if it reached the correct result for the wrong reason).
 

 [15]
 

 State v. Freese,
 
 116 Nev. 1097, 1104, 13 P.3d 442, 447 (2000) (noting that “[t]he totality of the circumstances test has been the standard for reviewing the validity of guilty pleas for some years”).
 

 [16]
 

 99 Nev. at 789, 672 P.2d at 43.
 

 [17]
 

 105 Nev. at 829, 784 P.2d at 2.
 

 [18]
 

 Id.
 

 [19]
 

 We reject Picetti’s claim that the misdemeanor waiver of rights forms he completed in both of his prior convictions were invalid because they were not file stamped because it is clear that these forms were part of the justice court’s record.
 

 [20]
 

 See Iowa v. Tovar,
 
 541 U.S. 77, 88 (2004) (citing
 
 Johnson v. Zerbst,
 
 304 U.S. 458, 464 (1938)).
 

 [21]
 

 Koenig,
 
 99 Nev. at 790, 672 P.2d at 43 (concluding that a record of a prior misdemeanor which contained only a waiver of rights similar to that produced in the instant case was constitutionally sufficient).
 

 [22]
 

 124 Nev. 564, 567, 188 P.3d 1079, 1081 (2008).
 

 [23]
 

 Id.
 

 [24]
 

 Hearing on S.B. 277 Before the Assembly Comm, on the Judiciary, 74th Leg. (Nev., May 8, 2007).
 

 [25]
 

 2007 Nev. Stat., ch. 288, § 6, at 1064.
 

 [26]
 

 110 Nev. 535, 541, 874 P.2d 1252, 1256 (1994),
 
 disapproved on other grounds by Wood
 
 v.
 
 State,
 
 111 Nev. 428, 430, 892 P.2d 944, 946 (1995).
 

 [27]
 

 124 Nev. at 571, 188 P.3d at 1083-84.