SONIA F., AS PARENT AND GUARDIAN AD LITEM OF J.M., PETITIONER, *v*. THE EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, AND THE HONORABLE ELISSA F. CADISH, DISTRICT JUDGE, RESPONDENTS, AND AMIR AHMAD, AKA AMIR AMAD; AZIZ AHMAD; AND LAURA AHMAD, REAL PARTIES IN INTEREST.

No. 51956

September 10, 2009 215 P.3d 705

*Law Offices of Douglas R. Johnson* and *Jennifer E. Sims* and *Douglas R. Johnson*, Las Vegas; *The Bach Law Firm, LLC*, and *Jason J. Bach*, Las Vegas, for Petitioner.

*Michael I. Gowdey*, Las Vegas, for Real Parties in Interest.

## OPINION

By the Court, HARDESTY, C.J.:

In this petition for extraordinary relief, we exercise our discretion to consider an issue of first impression; namely, whether Nevada's rape shield law, which restricts the admissibility of evidence concerning a sexual assault victim's history of sexual conduct, applies in civil cases.

We conclude that Nevada's rape shield law, codified under NRS 50.090, is plain and unambiguous, and applies only to criminal proceedings and not civil cases. We further conclude, however, that the district court may limit the discovery of an alleged victim's sexual history under NRCP 26, if necessary to protect the victim's interests.

### FACTS AND PROCEDURAL HISTORY

In November 2006, Sonia F., petitioner and guardian ad litem of J.M., filed a civil complaint against real party in interest Amir Ahmad, alleging various causes of action,[1] all of which stem from Ahmad's alleged rape of J.M. Specifically, Sonia F. claims that on the morning of July 5, 2006, Ahmad, who was 20 years old, forcibly raped her 14-year-old daughter, J.M., in Ahmad's parent's home. As a result of Ahmad's conduct, Sonia F. alleges that J.M. suffered and continues to suffer physical, emotional, and mental harm. Ahmad admits having sexual intercourse with J.M. but contends that it was consensual.

During discovery, Ahmad filed a motion to compel J.M. to submit to an independent medical examination to address J.M.'s claims for emotional damages. The district court granted the request for an independent examination, finding that the examination was appropriate because J.M. had placed her emotional and mental condition at issue.

Subsequently, Sonia F. moved the district court for a protective order seeking, in part, to prevent Ahmad and independent psychologists from questioning J.M. about her sexual history based on

---

[1]Specifically, Sonia F. asserted claims for sexual assault, statutory sexual seduction, battery, intentional and negligent infliction of emotional distress, gross negligence, negligence, and negligence per se.

Nevada's rape shield law. Ahmad opposed the motion, arguing that Nevada's rape shield law does not apply in civil cases because the element of damages differentiates the civil case from a criminal charge.

The district court denied, in part, Sonia F.'s motion for a protective order. Pertinent to this petition, the district court permitted Ahmad's attorneys and independent psychologists to question J.M. regarding her sexual history. In response, Sonia F. requested that the district court stay discovery so that she could file an emergency petition with this court seeking clarification of the application of Nevada's rape shield law to civil cases. The district court granted a temporary stay. Thereafter, this court granted a stay of all discovery related to J.M.'s sexual history pending the resolution of this writ petition.

## DISCUSSION

This court has original jurisdiction to issue writs of prohibition and mandamus. Nev. Const. art. 6, § 4. A writ of prohibition serves to stop a district court from carrying on its judicial functions when it is acting outside its jurisdiction. *Westpark Owners' Ass'n v. Dist. Ct.*, 123 Nev. 349, 356, 167 P.3d 421, 426 (2007). A writ of mandamus is available " 'to compel the performance of an act which the law requires as a duty resulting from an office or where discretion has been manifestly abused or exercised arbitrarily or capriciously.' " *Savage v. Dist. Ct.*, 125 Nev. 9, 14, 200 P.3d 77, 81 (2009) (quoting *Redeker v. Dist. Ct.*, 122 Nev. 164, 167, 127 P.3d 520, 522 (2006)). An extraordinary writ may only be issued in cases "where there is not a plain, speedy and adequate remedy" at law. NRS 34.330. In addition, the consideration of an extraordinary writ is often justified " 'where an important issue of law needs clarification and public policy is served by this court's invocation of its original jurisdiction.' " *Mineral County v. State, Dep't of Conserv.*, 117 Nev. 235, 243, 20 P.3d 800, 805 (2001) (quoting *Business Computer Rentals v. State Treas.*, 114 Nev. 63, 67, 953 P.2d 13, 15 (1998)).

Because this petition raises an important issue of public policy regarding whether Nevada's rape shield law applies in civil cases, we exercise our discretion to entertain Sonia F.'s petition.

### Whether Nevada's rape shield law applies in civil cases

The parties dispute whether the rape shield law contained in NRS 50.090 applies to civil cases. Sonia F. argues that public policy supports her argument that NRS 50.090's evidentiary limitations and protections extend to sexual assault victims who file civil actions.

Sonia F. thus argues that a sexual assault victim in a civil case, particularly a minor victim, should not be questioned regarding her sexual history. Ahmad, on the other hand, argues that NRS 50.090 is plain and unambiguous and does not apply in civil cases. Ahmad further argues that the damages element necessary to a civil prosecution for sexual assault warrants the introduction of the alleged victim's sexual history. Therefore, to resolve this petition, we are called upon to interpret NRS 50.090.

This court reviews issues of statutory construction de novo. *Stalk v. Mushkin*, 125 Nev. 21, 25, 199 P.3d 838, 840 (2009). When a statute is facially clear, this court will give effect to the statute's plain meaning and not go beyond the plain language to determine the Legislature's intent. *Public Employees' Benefits Prog. v. LVMPD*, 124 Nev. 138, 147, 179 P.3d 542, 548 (2008). Similarly, after reviewing the plain language of a statute, this court has concluded that "[t]he mention of one thing implies the exclusion of another." *State v. Wyatt*, 84 Nev. 731, 734, 448 P.2d 827, 829 (1968) (BATJER, J., dissenting). Therefore, where the Legislature has, for example, explicitly applied a rule to one type of proceeding, this court will presume it deliberately excluded the rule's application to other types of proceedings. *See id.*; *see also Matter of Estate of Prestie*, 122 Nev. 807, 814, 138 P.3d 520, 524 (2006). If, on the other hand, a statute is ambiguous, this court will construe a statute by considering reason and public policy to determine the Legislature's intent. *Cable v. EICON*, 122 Nev. 120, 124-25, 127 P.3d 528, 531 (2006).

Nevada's rape shield statute, codified under NRS 50.090, provides:

> In any *prosecution* for sexual assault or statutory sexual seduction . . . the *accused* may not present evidence of any previous sexual conduct of the victim of the crime to challenge the victim's credibility as a witness unless the *prosecutor* has presented evidence or the victim has testified concerning such conduct, or the absence of such conduct, in which case the scope of the *accused's* cross-examination of the victim or rebuttal must be limited to the evidence presented by the *prosecutor* or victim.

(Emphases added.)

We conclude that NRS 50.090 is plain and unambiguous and applies to criminal prosecutions but not to civil trials. Markedly, the term "accused" generally refers to a criminal defendant, and the term "prosecution" generally signifies a criminal action. *See*

*Mortensen v. State*, 115 Nev. 273, 280, 986 P.2d 1105, 1110 (1999) ("The plain language of NRS 48.045(2) uses the term 'person,' rather than 'defendant,' or 'accused.' In Nevada, 'words in a statute should be given their plain meaning unless this violates the spirit of the act.'" (quoting *McKay v. Bd. of Supervisors*, 102 Nev. 644, 648, 730 P.2d 438, 441 (1986)). Indeed, this court has previously stated that "NRS 50.090 . . . expressly limit[s] the admission of [evidence of a victim's prior sexual conduct] to prosecutions" and that "prosecution of a case does not exist until [criminal] charges are filed." *Lane v. District Court*, 104 Nev. 427, 443, 760 P.2d 1245, 1255 (1988).

In this instance, the plain language of NRS 50.090 prohibits the "accused" from presenting evidence of a sexual assault victim's sexual history in "any prosecution." Unlike Federal Rule of Evidence 412(a)(1), which provides that "evidence is not admissible in any civil or criminal proceeding [that is] . . . offered to prove that any alleged victim engaged in other sexual behavior," NRS 50.090 does not refer to the admissibility of evidence in civil proceedings. Therefore, under the rules of statutory construction, the Legislature specifically phrased NRS 50.090 to apply to criminal prosecutions to the exclusion of civil proceedings. *See Matter of Estate of Prestie*, 122 Nev. at 814, 138 P.3d at 524; *see also Doe by Roe v. Orangeburg Cty. Sch. Dist.*, 495 S.E.2d 230, 233 (S.C. Ct. App. 1997) (noting that because South Carolina's rape shield statute refers only to "prosecutions," it is not applicable in civil cases). Accordingly, we hold that NRS 50.090, Nevada's rape shield law, does not apply to civil cases.[2]

Nevertheless, in civil sexual assault cases, we conclude that discovery should not be unlimited. Rather, the district court should use its sound discretion to determine whether the discovery sought is consistent with NRCP 26(b)(1), which provides that inquiries must be relevant and "reasonably calculated to lead to the discovery of admissible evidence."

To that end, we identify *D.S. v. DePaul Institute*, 32 Pa. D. & C.4th 328 (Ct. Com. Pl. 1996), as instructive on this issue. Although the *DePaul* court concluded that Pennsylvania's criminal rape shield law did not apply in civil cases, it determined that dis-

---

[2]There are those jurisdictions that have held that the policy underlying the criminal rape shield law has similar import in civil cases. *See Macon Telegraph Pub. Co. v. Tatum*, 430 S.E.2d 18, 22 (Ga. Ct. App. 1993) (holding that the public policy underlying the rape shield law applies equally to civil actions), *judgment reversed on other grounds by Macon Telegraph Pub. Co. v. Tatum*, 436 S.E.2d 655 (Ga. 1993); *In re K.W.*, 666 S.E.2d 490, 493 (N.C. Ct. App. 2008) (holding that the logic behind the rape shield law makes the law applicable to civil actions). However, we defer to the Legislature to determine whether the public policy underlying the criminal rape shield law should be extended to include civil cases.

covery of a plaintiff's entire sexual history in a civil action was inappropriate. *Id.* at 333, 338. The court differentiated between the plaintiff's history of consensual sexual relationships from history of traumatic experiences, *id.* at 336-37, and thereafter emphasized that while consensual relationships may impact a person's emotions, "[t]he law should not force plaintiffs . . . to disclose their entire [consensual] sexual . . . histories whenever they claim that they have sustained psychiatric problems from a traumatic event." *Id.* at 338; *see also Giron v. Corrections Corp. of America*, 981 F. Supp. 1406, 1408 (D.N.M. 1997) (recognizing that the plaintiff's previous experiences may be relevant as to issue of damages "but only to the extent that such sexual contact caused pain and suffering").

We agree with the reasoning employed by the *DePaul* court for two reasons. First, the plain language of the rape shield law limits its application to criminal cases, and second, civil actions implicate different considerations for discovery, burdens of proof, and remedies than criminal prosecutions. However, we do not adopt a steadfast rule related to discovery in all civil proceedings for sexual assault. Rather, we stress that a district court has the broad discretion under NRCP 26 to determine, on a case-by-case basis, whether an alleged sexual assault victim's sexual history is discoverable. *See Abbott v. State*, 122 Nev. 715, 732, 138 P.3d 462, 473 (2006). And the discovery rules provide for the issuance of protective orders to allow the district court to limit discovery as it sees fit, in order to "protect [an alleged sexual assault victim] from annoyance, embarrassment, [or] oppression." NRCP 26(c)(5).

## CONCLUSION

Sonia F.'s petition raises an important issue of public policy related to the applicability of Nevada's rape shield law to civil proceedings. We conclude that NRS 50.090 is plain and unambiguous and applies only to criminal proceedings and not to civil actions. Nonetheless, we conclude that if necessary the district court may limit the discovery of an alleged victim's sexual history under NRCP 26 to protect the victim's interests.

Accordingly, we grant this petition in part. In addition, we vacate the stay on discovery that this court entered on February 2, 2009. The clerk of this court shall issue a writ of mandamus instructing the district court to conduct discovery in a manner consistent with this opinion.

PARRAGUIRRE, DOUGLAS, CHERRY, SAITTA, GIBBONS, and PICKERING, JJ., concur.